# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GARY A. GILENO,<br><br>Defendant. | CR 18–218 DSF<br><br>OPINION |

      Appellant Gary A. Gileno was convicted after a bench trial of failure to comply with a lawful directive of a federal officer in violation of 41 C.F.R. § 102–74.385. He timely appealed, asserting: (1) the directives of the Court Security Officers (CSOs) to remove his camera from the Pasadena Courthouse of the U. S. Court of Appeals for the Ninth Circuit abridged his constitutional rights; (2) the federal policy prohibiting still and video cameras did not preempt his right under the Brown Act to record the commission hearing that was being held at the Courthouse; and (3) the magistrate judge failed to consider mitigating factors when rendering a guilty verdict.

# I. FACTUAL BACKGROUND

## A. Appellant

Appellant self-identifies as a citizen journalist. In this capacity, he attends public hearings, films the hearings using his video camera, and posts the recordings on his YouTube channel. Appellant believed he had a right to record these meetings under the Brown Act (Cal. Gov. §§ 54950–59463). He was also a part of the group, We the People Rising. On August 24, 2017, Appellant and other We the People Rising members went to the Courthouse to videotape the Los Angeles County Sheriff Civilian Oversight Commission hearing (Hearing) being held there.

## B. CSOs

At the time of Appellant's arrest, Officer Kerry Tripp, who was employed by Inter-Con Security Services, was Lead CSO at the Courthouse. Officer Michael MacBean, Senior Lead CSO for the United States Marshals Service, Central District of California, supervised the Courthouse security. On August 24, 2017, he was the acting district supervisor and was requested to assist with security on that day.

## C. Events Leading to Appellant's Arrest

### 1. The Security Line and Officer Tripp

Officer Tripp testified that a Rules and Regulations Governing Conduct on Federal Property sign was located at the entryway of the Courthouse.[1] A "PHOTOGRAPHS PROHIBITED" sign was located next to the security screening area.[2] On entering the Courthouse, Officer Tripp screened Appellant's personal items, and saw that Appellant had a video camera. Officer Tripp told Appellant that cameras were not allowed in the Courthouse and that taking photographs in the Courthouse was also prohibited.[3] Officer Tripp did not recall whether he told Appellant he could enter the Courthouse if he left his camera in his

---

[1] A photo showing the sign and its location at the entryway was admitted.
[2] A photo of the "PHOTOGRAPHY PROHIBITED" sign was admitted.
[3] Appellant testified Officer Tripp immediately began yelling at him that Appellant could not bring his camera into the Courthouse.

vehicle. Officer Tripp also testified, however, that although the sign did not elaborate beyond barring photographs, he was not using his discretion when he ordered Appellant to leave his video camera outside the Courthouse: the no video camera policy was a mandatory order Officer Tripp was required to follow.

Appellant then told Officer Tripp that he was attending the Hearing, where recordings were allowed because it was a Brown Act meeting.[4] Officer Tripp did not respond to Appellant's inquiry concerning the Brown Act. Officer Tripp then asked Officer MacBean to intervene because Officer Tripp had to continue screening people into the Courthouse, and the security line had backed up while Officer Tripp was preoccupied with Appellant. Officer Tripp testified his instructions to persons entering the Courthouse were not related to the messages they were trying to convey.

Officer Tripp testified that the "PHOTOGRAPHS PROHIBITED" sign did not expressly prohibit bringing a camera into the Courthouse; however, photographs were not allowed and cameras and video recorders take photographs. Officer Tripp also testified he was not aware of any mandatory rule requiring CSOs to order members of the public to take cameras outside the Courthouse.

## 2. Officer MacBean

Appellant walked over to Officer MacBean at Officer MacBean's request. Appellant had his video camera out. Officer MacBean told Appellant three to four times to turn his camera off and that if he wanted to enter the Courthouse, he would have to put the video camera in his vehicle. At this point, security screening stopped because people were paying attention to Appellant, a crowd in the security line began to get involved, and Appellant's actions caused an obstruction of the

---

[4] On October 15, 2015, Appellant and another group member, Tressy Capps, went together to the Courthouse to attend a transportation meeting. Both Appellant and Capps testified that they began filming as they entered the Courthouse and none of the CSOs ordered them to turn their cameras off or put them away. Officer MacBean testified that the general policy and procedure regarding cameras and filming was the same in 2015 as it was in 2017. He inferred that because the video depicted CSOs allowing individuals to bypass security, a different photo and filming policy must have been in place on that day. The magistrate judge noted that Appellant did not offer any evidence to show what the camera and filming policies were on that particular day or whether the CSOs realized Appellant and Capps were filming.

3

entryway into the Courthouse. Appellant and Officers MacBean and Tripp all testified that Appellant then pointed his video camera in Officer MacBean's face, and Appellant admitted that he began recording Officer MacBean. [5] Appellant wanted the event documented. Officer MacBean pushed the camera out of his face. Appellant testified that Officer MacBean next asked him if he wanted "to be arrested?" Appellant replied, "what are you arresting me for?" and Officer Tripp and another officer walked over and helped Officer MacBean arrest Appellant. Appellant was cited for violating 41 C.R.F. § 102–74.385, and was held at the Courthouse for approximately an hour. Officer MacBean testified that he did not know anything about Appellant's political views and Appellant's political views had nothing to do with Appellant's arrest.

Officer MacBean testified that while individuals could bring devices, such as cellular phones that have video recording capability, into the Courthouse, CSOs instruct those individuals that they cannot record or videotape anything once they are inside the Courthouse. But the only reason to bring in a camera was to take photographs or video; therefore, there was no reason to bring it into the Courthouse. <u>Id.</u> If an officer discovered someone was taking photos or video recording, they were asked to turn it off. If someone was taking photos or recording in the courtroom, they were escorted out. If someone wanted to take photos or record video, that individual would have to request it through a judge.

### D. Appellant's Witness Hvidston Brought in Her Video Camera.

Robin Hvidston, the director of We the People Rising, accompanied Appellant to the Courthouse on August 24, 2017 to attend and record the Hearing. Hvidston was ahead of Appellant in the security line. She gave her purse and video camera bag with a video camera inside to security to inspect. After security checked her belongings, she went straight to the Hearing. Security did not flag her

---

[5] Appellant's video recording of his exchange with Officer MacBean was admitted.

camera, which was red. Hvidston sat in the front row of the Hearing and began recording the proceedings.[6] She assumed she was allowed to record the Hearing under the Brown Act and was not aware of any prohibition on videotaping. After about an hour of filming, a CSO told Hvidston that video cameras were not allowed in the Courthouse and she would have to put the camera back into her car. An officer escorted Hvidston to her car to ensure she complied with the order and allowed her to reenter the Courthouse for the remainder of the Hearing. Id. No one threatened to arrest her because she was filming the Hearing.

Appellant was found guilty of violating 41 C.F.R. § 102–385.

## II.    LEGAL STANDARD

This Court has jurisdiction pursuant to 18 U.S.C. § 3402. See U.S. v. Soolook, 987 F.2d 574, 575 (9th Cir. 1993). "The defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

This Court reviews the magistrate judge's legal conclusions de novo and findings of fact for clear error. United States v. Rodriguez, 518 F.3d 1072, 1076 (9th Cir. 2008). Mixed questions of fact and law that implicate constitutional rights are reviewed de novo. Berger v. City of Seattle, 569 F.3d 1029, 1035 (9th Cir. 2009).

## III.   DISCUSSION

### A.    **The Directive to Remove Appellant's Camera from the Courthouse was Lawful.**

41 C.F.R. § 102–74.385 provides: "Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals." The U.S. Court of Appeals for the Ninth Circuit Electronic Devices Policy (EDP) provides that while "electronic devices, such as a Blackberry, smart phone, laptop computer

---

[6] The magistrate judge admitted a photograph taken of the Hearing that captured Hvidston filming in the presence of more than one CSO.

or similar functioning device having wireless communications capability" may be brought into the Courthouse, these devices may not be used "to take photographs or for audio or video recording or transmission . . . ."

### 1. The Directive was not Unconstitutionally Overbroad.

Appellant contends the directive of Officers Tripp and MacBean to remove his camera from the Courthouse was unlawful because it was unconstitutionally overbroad. He maintains that because CSOs are not given a "foundational policy" regarding the scope of their discretion, CSOs have unfettered discretion to restrict expression and videotaping at public hearings.

Section 102–74.385 regulates both conduct and speech. U.S. v. Stansell, 847 F.2d 609, 613 (9th Cir. 1995). Before such a statute may be found overly broad, the overbreadth "'must not only be real, but *substantial* as well, judged in relation to the statute's plainly legitimate sweep.'" Id. at 613 (citing Broadrick v. Okla., 413 U.S. 601, 612 (1972)). "'Substantial overbreadth' is a criterion the [U.S. Supreme] Court has invoked to avoid striking down a statute on its face simply because of the possibility that it might be applied in an unconstitutional manner. It is applied where, despite some possibly impermissible application, the remainder of the statute covers a whole range of easily identifiable and constitutionally proscribable conduct." Sec'y of State of Md. v. J.H. Munson Co., 467 U.S. 947, 964 (1984) (citation, internal quotation marks, and alterations omitted). But where there is "no core of easily identifiable and constitutionally proscribable conduct," the regulation is unconstitutionally overbroad. Stansell, 847 F.2d at 613 (quoting J.H. Munson Co., 467 U.S. at 965). To prove such a statute is substantially overbroad, a litigant must demonstrate that the statute "as applied" to him is unconstitutional. Id. (citation omitted).

In Stansell, Federal Protective Service officers arrested protesters at a federal building after they failed to comply with instructions to move away from the doorways of the building. Defendants appealed

their convictions for violating § 101–20.304 (predecessor to § 102–74.385[7]), arguing the section was unconstitutionally overbroad on its face. The Ninth Circuit determined the section could be properly limited by reading it in the context of the other regulations in the subpart. The subpart provided a regulatory scheme for federal property management; other regulations within the subpart identified the "core conduct that may constitutionally be controlled on federal property in order to preserve the normal functioning of federal facilities"; reading the section in the context of the entire subsection indicated the section had a reasonable limiting construction; and the regulation did not grant unfettered discretion to federal officer. Id. at 614-15. The section was therefore not substantially overbroad.

Here, as in Stansell, the regulation, as applied to Appellant was not unconstitutional. While the Ninth Circuit EDP does not expressly ban stand-alone still or video cameras, it does expressly prohibit individuals from taking photographs or filming without prior approval. Officer MacBean testified that CSOs prohibited still and video cameras because their only function was to take photographs or video; therefore there was no reason to bring them into the Courthouse. The magistrate judge also noted that while no court was in session, judges and their staff were working in the Courthouse on that day. The CSOs had to ensure the safety and privacy of both the judges and staff and make sure they were not photographed or filmed without their consent. They did not have or exercise unfettered discretion.

### 2. **The Directive was not Vague.**

Appellant argues the directive was vague because the "PHOTOGRAPHS PROHIBITED" sign did not clearly convey that Appellant could not bring his camera into the Courthouse.

"Under the void-for-vagueness doctrine, a penal statute must 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that

---

[7] 41 C.F.R. § 101-20.304 provided: "Persons in and on property shall at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal Protective Officers and other authorized individuals."

does not encourage arbitrary and discriminatory enforcement.'" Id. at 615 (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1982)). The purpose of section 102–74.38 is to protect federal property and "preserve the normal functioning of federal facilities." Id. at 614. The scope of lawful orders or directives is limited to those that preserve the functioning of the courthouse. The regulation is not void for vagueness. Id. at 615–16.

The directive was reasonable given the circumstances and therefore was not vague. The magistrate judge properly found that Appellant was on notice that he could not bring in his camera. The "PHOTOGRAPHS PROHIBITED" sign should have at least signaled to Appellant that there were likely filming restrictions. Even if Appellant did not interpret the sign in that manner, however, CSOs told Appellant several times that cameras were prohibited. Appellant understood the CSOs' instructions, as is clear from Appellant's exchange with both CSOs regarding whether the Brown Act gave him the right to bring in his camera despite their directive.

Officers Tripp and MacBean did not arbitrarily or selectively enforce the camera prohibition. Officer Tripp testified that the security line began to back up because he had to continue to engage with Appellant. Appellant's witness Masonis testified there was a "commotion" surrounding Officer MacBean and Appellant.  Appellant's, Officer Tripp's and Officer MacBean's testimony all corroborate Appellant was arrested *after* the CSOs told Appellant several times that photographs and cameras were prohibited in the Courthouse and *after* Appellant began recording Officer MacBean. (Even if the Brown Act had provided an exception, Appellant could not have thought he was permitted to photograph Officer MacBean.) [8]

### 3. The Directive Prohibiting Cameras in the Courthouse did not Violate Appellant's Constitutional Rights.

---

[8] The magistrate judge properly found Appellant's actions caused a disruption and security screening stopped to deal with the situation. Appellant's colleague Hvidston was allowed to reenter after she put her camera away, suggesting Appellant would also have been allowed to reenter the Courthouse had he complied.

8

Appellant argues that prohibiting cameras in the Courthouse deprived him of his constitutional right to film the Hearing. He maintains that under Leigh v. Salazar, 677 F.3d 892 (9th Cir. 2012), as a citizen journalist, he has a First and Fourteenth Amendment right to attend and film government proceedings. Appellant also asserts that for the purposes of the Hearing, the Courthouse was converted into a limited public forum that was compatible with the right to film under the Brown Act.

The Government contends that even if the Courthouse had been transformed into a limited public forum for the purposes of the Hearing, the rules against photography and filming were reasonable time, place, and manner restrictions that were applied in a content-neutral manner.

The Court conducts an independent review of the facts as to issues arising under the First Amendment. Berger, 569 F.3d at 1035.

The government can restrict free speech on its property. The nature of the forum determines the extent to which the government can constrain free speech. Cornelius v. NAACP Legal Def. and Educ. Fund, Inc., 473 U.S. 788, 797 (1985). For the purposes of determining the extent to which a government can restrict free speech on its property, the property is categorized as either a traditional public forum, a designated public forum, or a limited public forum. Hopper v. City of Pasco, 241 F.3d 1067, 1074 (2001). "A limited public forum is a subcategory of a designated public forum, that 'refer[s] to a type of nonpublic forum that the government has intentionally opened to certain groups for certain topics.'" Id. at 1074.

Judicial and municipal complexes are not public fora. Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City, 303 F.3d 959, 966 (9th Cir. 2002) (abrogated on other grounds). Free speech restrictions in a nonpublic forum are constitutional if they are viewpoint neutral and reasonable in light of the purpose served by the forum. Id. at 966 (citing Cornelius, 473 U.S. at 806); Hopper, 241 F.3d at 1075. A speech restriction in a nonpublic forum is reasonable if there

is evidence that the restriction reasonably fulfills a legitimate need. Id. at 967.

Here, the camera prohibition was reasonable because ban served a legitimate security need.

The camera prohibition was also viewpoint neutral. Officers Tripp and MacBean testified that they always enforced the no camera and video camera prohibition. Officers Tripp or MacBean testified that they were not aware of Appellant's political beliefs. Neither party offered testimony or other evidence at trial that indicated there was any discussion related to politics. Both Appellant and the officers' testimony focused on their discussion regarding the camera prohibition and the Brown Act–nothing more.

Additionally, Appellant's access-to-film-government-proceedings argument under Salazar fails. In Salazar, the Circuit agreed with a photojournalist that she had a valid First Amendment claim when the government restricted her access to observe government horse round-ups. Salazar, 677 F.3d at 896. The Circuit did not discuss the right to film, record, or otherwise broadcast that event. There is no indication that the CSOs here were prohibiting access to the Hearing. Appellant simply was prohibited from entering the Courthouse with his camera.

### B. Preemption and the Brown Act.

Appellant argues that the CSOs' directive does not supersede the Brown Act under the Supremacy Clause of the U.S. Constitution because the purpose of the Brown Act is unrelated to the purpose of § 102–74.385. See U.S. Const. art. VI, cl.2.

The Government asserts that "by regulating activity on federal property, Congress appear[ed] to have intended on taking over that sphere and preempt any state legislation that would purport to govern conduct on federal property." The Court agrees.

In any event, under the Ninth Circuit Media policy, individuals *can* bring still or video cameras if they receive prior approval.[9] Officer

---

[9] https://cdn.ca9.uscourts.gov/datastore/uploads/news_media/camera.guidelines.pdf (retrieved Sept. 28, 2018).

MacBean testified that he was aware of this exception to the camera and video prohibition. The magistrate judge also noted this exception. There is no conflict between the Brown Act and § 102–74.385.

### C. <u>Appellant's Arrest Was Not Retaliatory</u>

Appellant argues the directive was unlawful because it violated his Fourth Amendment right against retaliatory arrest. However, this is an appeal of a criminal conviction and a retaliatory arrest, or <u>Bivens</u>, claim is a civil action for damages. It is not an appropriate claim on this appeal. See <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

### D. <u>Mitigating Circumstances Considerations Do Not Apply to Convictions.</u>

Courts consider mitigating circumstances when imposing a sentence, not when determining whether to convict a defendant. See 18 U.S.C. § 3553(b)(1). The Court finds no error with regard to the sentence.

## IV. CONCLUSION

Appellant's conviction and sentence for violating 41 C.F.R. § 102–74.385 are AFFIRMED.

Date: October 9, 2018

_____
Dale S. Fischer
United States District Judge